**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.1:25-cv-24913-JEM**

ELSA KEIDAN and GARRICK S. KEIDAN,
individually and on behalf of all others
similarly situated,

Plaintiffs,
v.

AT&T SERVICES, INC.,

Defendant.
_______________________________________/

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Elsa Keidan and Garrick S. Keidan ("Plaintiffs") bring this putative class action against Defendant AT&T Services, Inc. ("Defendant" or "AT&T") and, based upon personal knowledge as to Plaintiffs and Plaintiffs own acts and experiences, and upon information and belief, including through investigation by Plaintiffs' counsel, as to all other matters, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. This putative class action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., and the Federal Communications Commission regulations promulgated thereunder ("TCPA"), and Defendant's violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

2. Through its enactment of the TCPA, Congress "targeted unwanted telephone calls (as well as unwanted phone messages)." *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023).

3. To promote its goods and services, Defendant engages in unsolicited telephone call marketing to consumers in violation of the TCPA and FTSA.

4. As alleged herein, Defendant repeatedly violated the TCPA and/or the FTSA by (1) sending automated telephone calls to Plaintiffs and the proposed Class (the "Class," defined below) without having prior express written consent; (2) sending telephone calls to Plaintiffs and the Class members while their residential phone numbers were registered on the national do-not-call ("DNC") registry without their prior express written consent; and (3) by continuing to send telephone calls to Plaintiffs and the Class members even after they had clearly requested to not receive further calls.

5. Through this action, Plaintiffs seek an award of statutory damages to Plaintiffs and the Class, as well as injunctive relief ending Defendant's unlawful conduct that has resulted in intrusion into Plaintiffs' and the Class's peace and quiet in a realm that is private and personal to Plaintiffs and the Class members. *See Drazen*, 74 F.4th at 1345.

6. The FTSA and TCPA were designed to prevent the telemarketing described within this Complaint, and to protect the privacy of citizens like Plaintiff and the Class. The Federal Communications Commission (FCC) reports that unwanted calls and texts constitute its top consumer complaint. *See* Federal Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021).

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over Plaintiffs' federal TCPA claims pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiffs' FTSA claims pursuant to 28 U.S.C. § 1367, as the FTSA claims form part of the same case or controversy as Plaintiffs' claims under the TCPA.

9. This Court has personal jurisdiction over Defendant because Defendant is a Delaware corporation with a place of business and/or conducts business in Florida. Moreover, this suit arises out of and relates to Defendant's contacts with this state. Defendant initiated and directed the unlawful telephone calls at issue from Florida to Plaintiffs' telephone number with a Florida area code, and Plaintiffs received such messages while residing, and physically present, in Florida.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is deemed to reside in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

11. Plaintiffs are natural persons and, at all relevant times, were residents of Miami-Dade County, Florida.

12. Defendant is a Delaware Corporation with offices in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS

13. To promote the sale of its goods and services, Defendant engages in aggressive and intrusive telemarketing using automated technology to send telephone calls solicitations to consumers, without their prior express written consent, including to consumers whose phone numbers are registered on the national DNC registry, and to consumers who already made requests to not receive future communications from Defendant.

14. Between at least June 13 and June 21, 2025, the Keidans received eleven unsolicited calls from or on behalf of AT&T to their cellular telephone number ending 9558. Each call followed a similar pattern: a representative would attempt to sell AT&T products or services. On each call, the Keidans made clear and repeated statements that they were not interested and have no desire to be contacted again.

15. For example, on June 13 at 10:23 a.m., Mrs. Keidan spoke with a representative calling from AT&T telephone number 855-419-7365. She instructed AT&T to remove the Keidans from its calling list. The same number called again on June 16 at 10:17 a.m., June 18 at 10:09 a.m., and twice on June 19 at 10:07 a.m. and 10:11 a.m. Mrs. Keidan reiterated each time that she did not want to be contacted further.

16. AT&T continued to call from other telephone numbers — 305-786-0921 on June 19 at 12:24 p.m., 305-786-0308 on June 20 at 1:25 p.m., and, 877-770-8125, which called three times over a 24-hour span on June 20 and June 21. Mrs. Keidan explicitly requested to be removed from all contact lists on each of these calls.

17. In addition to the telemarketing calls, the Keidans had three uninvited home visits by AT&T representatives. On June 16 and June 18, a representative named Joel Jiron attempted to sell AT&T services. The Keidans again made it clear that they did not want these visits, that they were unwelcome, and that they was not interested in any products or services. Yet on June 27, another representative, Raymond Gil, knocked on their door once again, blatantly ignoring the Keidans' prior requests.

18. These uninvited home visits demonstrate AT&T's overall multifaceted marketing campaign and efforts to solicit new customers for its products and services.

19. Because of the continued violations despite Plaintiffs clear revocation of any alleged prior consent, Plaintiffs are entitled to an enforceable injunctive order from the Court to stop the on-going violations.

20. Upon information and belief, the subject sales calls to Plaintiffs were transmitted using an automated system for the selection and dialing of telephone numbers.

21. The following facts strongly suggest that Defendant used such automated technology to send the telephone calls at issue: (1) Plaintiffs never provided Defendant with their phone numbers; (2) Plaintiffs have no existing business relationship with Defendant; (3) Defendant's unsolicited sales calls to Plaintiffs were generic and obviously prewritten and, thus, were designed for *en masse* transmission; (4) Defendant's telephone calls include automated "opt out" language; and (5) Defendant's website concedes that it places telemarketing calls and telephone calls utilizing "Automatic Telephone Dialing Systems (including 'Predictive Dialers' or 'Autodialers')[.]"

22. Additionally, because Defendant's dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making calls/texts without manually dialing the recipients numbers; and because the hardware and software used by Defendant to send such calls/texts have the capacity to both select numbers to be dialed and to dial such numbers in an automated fashion based on predetermined, programmed, or random criteria or settings, it demonstrates that the selection and dialing of the numbers at issue are done using an automated system.

23. Because Defendant continued to call Plaintiffs despite Plaintiffs revoking any consent, it further demonstrates that an automated system was used to select and dial Plaintiff's number, that Defendant failed to have in place or implement an adequate DNC system and procedures, Defendant's failure to ensure that adequate procedures and safeguards were in place to honor opt-out requests, and/or that Defendant willfully continued to call Plaintiffs despite their express revocation of any conceivable consent.

24. Indeed, if a human had seen Plaintiffs' stop requests and/or their numbers on Defendant's do-not-call list, Defendant would not have continued to call Plaintiffs, demonstrating

the use of an automated system. If a human did see Plaintiffs' stop requests and/or their numbers on Defendant's do-not-call list, yet still manually continued call Plaintiffs' number regardless, it demonstrates willful misconduct and a knowing violation of the telemarketing laws designed to protect to all United States consumers.

25. Defendant not only fails to honor internal DNC requests, it also fails to scrub numbers against the national DNC registry before placing telemarketing text messages.

26. Defendant's automated system selects and dials numbers from a lead list of numbers to be dialed without regard to whether those numbers have been placed, or should have been placed, on Defendant's internal DNC list or on the national DNC list. If it was not automated, human intervention would have prevented the texts from being placed to a number that continued to text STOP and that was on the national DNC list.

27. In addition to the aggressive telemarketing call campaign, Defendant's agents and telemarketers also engage in door-to-door in-person solicitations at Plaintiffs' home. They regularly attempt to solicit Plaintiffs to become customers despite Plaintiffs' telling them to no longer enter their property and to stop calling them

28. This coordinated and common telemarketing further demonstrates that Defendant instructs, authorizes, promotes, and/or knowingly accepts the marketing benefits of the telemarketing, including consumer leads generated through the marketing efforts.

29. Defendant's sales calls to Plaintiffs constitute "telephone solicitations" under the TCPA because they were placed for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

30. Defendant's unsolicited calls constitute "telephonic sales calls" under the FTSA because they were placed for the purpose of soliciting a sale of consumer goods or services.

31. Plaintiff Elsa Keidan is the subscriber and sole user of the 9558 Number, and she is financially responsible for the service to that number.

32. Moreover, Plaintiff Elsa Keidan, registered her residential 9558 Number on the national DNC registry on October 29, 2022, and it has been so registered at all relevant times.

33. Plaintiff Garrick S. Keidan is the subscriber and sole user of the 5110 Number, and he is financially responsible for the service to that number.

34. Plaintiff Garrick S. Keidan, registered his residential 5110 Number on the national DNC registry on April 25, 2012, and it has been so registered at all relevant times.

35. Plaintiffs never provided Defendant with prior express written consent, or any consent, to receive telephone solicitation telephone calls using automated technology to their respective telephone numbers, which are registered in the national DNC registry.

36. Even if, *arguendo*, Plaintiffs had consented to receive Defendant's telephone solicitations (which they did not), Plaintiffs revoked any such purported consent when they began receiving sales calls from Defendant.

37. Defendant's failure to honor Plaintiffs' optout requests strongly suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, and/or fails to adequately implement its training and/or procedures, as required by Section 64.1200(d)(2); and (3) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

38. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all telephone solicitations it made to advertise/promote its goods and

services. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiffs and the Class members.

39. Plaintiffs are the subscribers or customary users of their cellular telephone numbers that Defendant called and are financially responsible for the phone service, including the cellular costs and data usage incurred as a result of the calls made to Plaintiffs by Defendant.

40. The telemarketing at issue caused Plaintiffs and putative Class Members harm. In addition to using their cellular data, storage, and battery life, they suffered invasion of privacy, aggravation, annoyance, frustration, distraction, and their seclusion was intruded upon, forcing them to divert attention away from their work, home life and other activities, inconvenience, wasted time, risk of future harm, causing disruption to their work, sleep, and other activities, and violations of their substantive statutory rights under the TCPA and FTSA to remain free of unsolicited calls.

41. Plaintiffs and Class Members had to spend wasted time away from work, family, and personal activities, and suffered aggravation, because of Defendant's unsolicited calls.

42. For example, apart from forcing Plaintiffs to spend time communicating with Defendant and investing time researching and hiring counsel, Plaintiffs received some of the unsolicited calls while working, and sometimes while spending quality time with family or trying sleep. This caused Plaintiffs on multiple occasions to stop to check their phones and waste time to confirm they were not for an emergency purpose, causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal and daily life.

43. The calls are a disruptive nuisance. *See Drazen* v, No. 21-10199 (11th Cir. July 24, 2023 (en banc) ("A plaintiff who receives an unwanted, illegal text message suffers a concrete injury"); *See Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200, 1211 (11th Cir. 2018).

("[T]ime wasting is an injury in fact".... "[A] small injury... is enough for standing purposes"); *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

44. Defendant's telemarketing messages caused Plaintiffs and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

45. Plaintiffs bring this action individually and as a class action under Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

> **<u>The "TCPA DNC Registry" Class</u>: All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) to whom two or more telephone solicitations were placed in any 12-month period (2) by or on behalf of Defendant (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.**
>
> **<u>The "TCPA Internal DNC" Class</u>: All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) made a request to not receive telemarketing by Defendant; but (2) were sent two or more telephone solicitations in any 12-month period (3) by or on behalf of Defendant (4) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.**
>
> **<u>The "FTSA No Consent" Class</u>: All persons in the State of Florida who, between July 1, 2021, through the date of class certification (1) were placed a telephone solicitation (2) regarding Defendant's property, goods, and/or services (3) using the same equipment or type of equipment utilized to message Plaintiffs, (4) and who did not give prior express written consent.**
>
> **<u>The "FTSA Internal DNC" Class</u>: All persons in the State of Florida who, between July 1, 2021, through the date of class certification (1) were placed a telephone call (2) regarding Defendant's property, goods, and/or services (3) after they had instructed Defendant or it's agents to stop calling.**

46. The proposed Classes defined above are collectively referred to as the "Classes" or, at times, the "Class."

47. Plaintiffs reserve the right to expand or narrow the definitions of each Class following discovery and prior to moving for class certification.

48. Excluded from the Class is Defendant and its employees and agents.

49. ***Numerosity.*** The members of the Class are so numerous that individual joinder is impracticable. Plaintiffs cannot know the exact number of Class members affected by Defendant's conduct, but based on the general nature of telemarketing campaigns, Plaintiffs believe, and therefore allege upon information and belief, that each Class includes, at a minimum, 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members are unknown at this time but can be ascertained through discovery, and identification of the Class members is a matter capable of ministerial determination from Defendant's records.

50. ***Common questions of law and fact predominate.*** There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a. Whether Defendant placed telephone calls to Plaintiffs and the Class using an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA;

b. Whether Defendant placed telephone calls to Plaintiffs and the Class while their telephone numbers were registered on the national DNC registry;

c. Whether Defendant placed telephone calls to Plaintiffs and the Class after they made a request to not receive future telemarketing;

d. Whether Defendant had adequate processes or protocols in place to prevent placed telephone calls to persons who made a request to not receive telemarketing;

e. Whether Defendant's telephone calls constitute "telephone solicitations" under the TCPA;

f. Whether Defendant's telephone calls constitute "telephonic sales calls" under the FTSA;

g. Whether Defendant can meet its burden of showing that it had express written consent to place telephone calls to Plaintiffs and the Class;

h. Whether Defendant is liable to Plaintiffs and the Class for liquidated statutory damages, and the amount of such damages; and

i. Whether Defendant should be enjoined from engaging in such conduct in the future.

51. ***Typicality.*** Plaintiffs' claims are typical of the claims of the members of the Class because they are based on the same factual and legal theories, Plaintiffs and the Class members were harmed by Defendant in the same way, and Plaintiffs are not subject to any unique defenses.

52. ***Adequacy of Representation.*** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action. Further, Plaintiffs have no interests that are antagonistic to those of the members of the Class.

53. ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class are in the millions of dollars, the amount of individual damages to each member of the Class resulting from Defendant's wrongful conduct does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

54. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

## CAUSES OF ACTION

## COUNT 1

### Violation of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiffs and the TCPA DNC Registry Class)

55. Plaintiffs re-allege and incorporates by reference the allegations in the paragraphs 1 through 54 above, as if fully set forth herein.

56. The TCPA establishes a national DNC registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

57. The FCC's implementing regulation under the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not

wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

58. A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." § 64.1200(f)(15).

59. A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]," which includes Section 64.1200(c). § 227(c).

60. Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiffs and the members of the TCPA DNC Registry Class while their respective telephone numbers were registered on the National DNC Registry.

61. As a result of Defendant's violations of the TCPA, Plaintiffs and the other members of the Class were harmed.

62. Plaintiffs and the members of the Class are entitled to an injunction against Defendant's conduct. *See* § 227(c)(5)(A).

63. Plaintiffs and the Class are entitled to an award of statutory damages of $500.00 for each telephone call that violates the TCPA. *See* § 227(c)(5)(B).

64. Because Defendant knew or should have known that it was contacting numbers on the national DNC registry without consent, Defendant's violations of the TCPA were willful or knowing.

65. Plaintiffs and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. *See* § 227(c)(5)(C).

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and the Class relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT 2**

**Violation of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiffs and the TCPA Internal DNC Class)**

66. Plaintiffs re-allege and incorporates by reference the allegations in paragraphs 1 through 54 above, as if fully set forth herein.

67. Under the FCC regulations promulgated under and actionable through the TCPA:

> No person or entity shall ***initiate any call for telemarketing purposes*** to a residential telephone subscriber ***unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity***. The procedures instituted must meet the following minimum standards:
>
> > **(1)** ***Written policy***. Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > **(2)** ***Training of personnel***. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > **(3)** ***Recording, disclosure of do-not-call requests***. If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the

> subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> * * *
>
> **(6)** ***Maintenance of do-not-call lists.*** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d) (emphasis added).

68. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227] may" bring a private action. 47 U.S.C. § 227(c)(5).

69. Plaintiffs and the TCPA Internal DNC Class members made requests to Defendant to not receive future telephone solicitations.

70. Defendant failed to honor Plaintiffs' and the TCPA Internal DNC Class members' opt-out requests.

71. Defendant's failure to honor Plaintiffs' opt-out request strongly suggests that Defendant does not comply with requirements of Section 64.1200(d) to (1) maintain the required

written policies; (2) provide adequate training to its personnel engaged in telemarketing; (3) maintain an internal do-not-call list; and (4) honoring opt-out requests.

72. Because Defendant does not comply with the requirements of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] ***any call*** for telemarketing purposes" (*i.e.* every telephone call it sent as part of its telemarketing campaign, regardless of whether any consumer requested that Defendant stop placing the calls).

73. As a result of Defendant's violations of the TCPA, Plaintiffs and the other members of the Class were harmed.

74. Plaintiffs and the members of the Class are entitled to an injunction against Defendant's conduct. *See* § 227(c)(5)(A).

75. Plaintiffs and the Class are entitled to an award of statutory damages of $500.00 for each telephone call that violates the TCPA. *See* § 227(c)(5)(B).

76. Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without having the procedures in place to record and honor opt out requests that Section 64.1200(d) requires, Defendant's violations of the TCPA were willful or knowing.

77. Plaintiffs and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. *See* § 227(c)(5)(C).

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and the Class relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT 3**

**Violations of the FTSA, § 501.059(8)(a)**
**(On Behalf of Plaintiffs and the FTSA No Consent Class)**

78. Plaintiffs re-allege and incorporates by reference the allegations in paragraphs 1 through 54 above, as if fully set forth herein.

79. The FTSA prohibits a person from making "a telephonic sales call" if such call "involves an automated system for the selection or dialing of telephone numbers…without the prior express written consent of the called party." § 501.059(8)(a).

80. "Prior express written consent" means a written agreement that "clearly authorizes the person making or allowing the placement of a telephonic sales call by…text message…to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers[.]" § 501.059(1)(g).

81. Plaintiffs are, and at all times relevant were, a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiffs were the regular users of the cellular telephone numbers that received Defendant's telephonic sales calls.

82. Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Section 501.059(1)(i).

83. Defendant's telephone calls to Plaintiffs and the FTSA No Consent Class promoted "consumer goods or services" as defined by Section 501.059(1)(c).

84. Defendant's telephone calls to Plaintiffs and the FTSA No Consent Class were "telephonic sales calls" as defined by Fla. Stat. Section 501.059(j).

85. Defendant's telephone calls to Plaintiffs and the FTSA No Consent Class were transmitted using an automated system for the selection and dialing of telephone numbers.

86. Defendant sent the telephone calls to Plaintiffs and the FTSA No Consent Class from Florida, or otherwise directed the messages to be sent from Florida.

87. Defendant did not obtain "prior express written consent" to send the telephone calls to Plaintiffs and the FTSA No Consent Class using an automated system, as required by Section 501.059(8)(a).

88. Thus, Defendant's telephone calls violate the FTSA, Section 501.059(8)(a).

89. Plaintiffs and the FTSA No Consent Class are entitled to an award of statutory damages of $500 per telephone call that violates the FTSA. § 501.059(10)(a).

90. Plaintiffs and the FTSA No Consent Class are entitled to an award of statutory damages of $1,500 for each willful violation of FTSA. § 501.059(10)(b).

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiffs and the Class relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT 4**

**Violations of the FTSA, § 501.059(5)**
**(On Behalf of Plaintiffs and the FTSA Internal DNC Class)**

91. Plaintiffs re-allege and incorporates by reference the allegations in paragraphs 1 through 54 above, as if fully set forth herein.

92. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a]…text message…to a consumer, business, or potential donor…who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound…telephone call … made by or on behalf of the seller whose goods or services are being offered[.]" § 501.059(5).

93. Plaintiffs are, and at all times relevant were, a "called party" as defined by Section 501.059(1)(a) in that Plaintiffs were the regular user of the cellular telephone number that received Defendant's telephonic sales calls.

94. Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

95. Defendant's telephone calls to Plaintiffs and the FTSA Internal DNC Class promoted "consumer goods or services" as defined by Section 501.059(1)(c).

96. Defendant's telephone calls to Plaintiffs and the FTSA Internal DNC Class were "telephonic sales calls" as defined by Fla. Stat. Section 501.059(j).

97. Defendant sent the telephone calls to Plaintiffs and the FTSA Internal DNC Class from Florida, or otherwise directed the messages to be sent from Florida.

98. Plaintiffs and the FTSA Internal DNC Class members replied "stop" to Defendant's telephonic sales calls, but they continued to receive telephone calls from Defendant.

99. Defendant's continued telephone calls to Plaintiffs and the FTSA Internal DNC Class members after they replied "stop" to Defendant's telephone calls violate Section 501.059(5).

100. Plaintiffs and the FTSA Internal DNC Class are entitled to an award of statutory damages of $500 per telephone call that violates the FTSA. § 501.059(10)(a).

101. Plaintiffs and the FTSA Internal DNC Class are entitled to an award of statutory damages of $1,500 for each willful violation of FTSA. § 501.059(10)(b).

WHEREFORE, Plaintiffs respectfully request the Court grant Plaintiffs and the Class relief against Defendant, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, prays for the following relief:

A. An Order certifying the Classes, appointing Plaintiffs as Class Representative, and Plaintiffs' counsel as Class Counsel;

B. An Order declaring that Defendant's actions alleged herein violate the TCPA and the FTSA;

C. An award to Plaintiffs and each member of the Class of statutory damages of $500 per violation, for each telephone call that violates the TCPA, and an award of $1,500 for each violation found to be knowing or willful;

D. An award to Plaintiffs and each member of the Class of statutory damages of $500 per violation, for each telephone call that violates the FTSA, and an award of $1,500 for each violation found to be knowing or willful;

E. An award to Plaintiffs and the Class of attorneys' fees and costs of this action.

F. An injunction requiring Defendant to stop sending telephone calls to Plaintiffs the Class without prior express written consent, and to comply with the requirements of 47 C.F.R. § 64.1200(d).

G. Such further and other relief as the Court deems necessary.

**JURY TRIAL DEMAND**

Plaintiffs request a trial by jury on all issues so triable.

Dated: January 30, 2026.

Respectfully submitted,

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.
Florida Bar. No.: 0067926
E-mail: JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman, Esq.
Florida Bar No. 132896
E-mail: seth@lehrmanlaw.com
**LEHRMAN LAW**
622 Banyan Trail, Suite 200
Boca Raton, FL 33431
Telephone: 754-778-9660

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **30th day of January, 2026** I electronically filed the forgoing document with the Clerk of the Court using CM/ECF. I also certify under penalty of perjury under the laws of the United States of America that the foregoing document is being served this day on all counsel of record via transmission Notices of Electronic Filing generated by CM/ECF and/or on all counsel listed below.

/s/___*Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq.

## SERVICE LIST

Steven J. Brotman, Esq.
Fla. Bar No.: 85750

E-mail: steven.brotman@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, FL 33401
Telephone: (561) 833-7700
Facsimile: (561) 655-8719

*Attorney for Defendant*