**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: 1:25-cv-24913-JEM

ELSA KEIDAN and GARRICK S. KEIDAN, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

AT&T SERVICES, INC.,

Defendant.
_______________________________________/

**MOTION TO COMPEL ARBITRATION AND STAY LITIGATION AND, IN THE ALTERNATIVE, MOTION TO DISMISS SECOND AMENDED COMPLAINT**

AT&T Services, Inc. ("AT&T") moves to compel arbitration of the claims asserted by Plaintiffs Elsa Keidan and Garrick S. Keidan's in their Second Amended Complaint (ECF No. 20), or in the alternative, to dismiss under Federal Rule of Civil Procedures 12(b)(6).

## INTRODUCTION

Based on the clear language in the arbitration provision Plaintiff Elsa Keidan signed, this matter belongs in arbitration. While it is impossible to determine from Plaintiffs' allegations whether AT&T is even responsible for the alleged calls, a binding agreement requires that this matter be stayed until arbitration is completed.

This case arises from several phone calls allegedly placed to Plaintiffs between June 13 and June 21, 2025. Plaintiffs allege the calls violate the Telephone Consumer Protection Act (47 U.S.C. § 227, "TCPA") and the Florida Telephone Solicitation Act (Fla. Stat. § 501.059, "FTSA") because the calls were allegedly made to Plaintiffs without their consent.

While it is unclear whether Plaintiffs allege that these calls were made by AT&T directly or someone supposedly calling on behalf of AT&T, it is clear that Plaintiff Elsa Keidan contracted with AT&T to arbitrate any disputes with AT&T.

Elsa Keidan accepted AT&T's Customer Service Agreement ("CSA") when she entered into a contract with AT&T in connection with her Connected Car account on or about March 27, 2022. The CSA states that "all disputes and claims" are subject to arbitration using the AAA Consumer Arbitration Rules, including "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common law legal theory." Further, the CSA clearly states that Elsa Keidan waives her right to trial by a jury or to participate in a class action. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires enforcement of this arbitration provision.

Accordingly, this Court should compel arbitration of Plaintiff's claims on an individual basis. Further, and pursuant to Section 3 of the FAA, the Court should stay this litigation as to both Elsa Keidan and Garrick Keidan[1] pending the outcome of that arbitration. To the extent the Court determines that Plaintiffs' claims are subject to arbitration, the Court need not address the remainder of AT&T's arguments relating its Motion to Dismiss.

As to the Motion to Dismiss, Elsa Keidan specifically requested to be contacted prior to any of the communications alleged in the Second Amended Complaint. Specifically, AT&T received a request from Elsa Keidan on February 14, 2024 to be contacted when AT&T Fiber became available at her home address using the "Notify Me" process on www.att.com. She

[1] Elsa's husband, Garrick, is not a party to the CSA. His claims are directly intertwined, however, with Elsa's claims and stay of the entire proceeding is appropriate pursuant to Section 3 of the FAA. More to the point, although Garrick Keidan is a named Plaintiff, the Complaint does not even allege that any of the alleged calls were made to his telephone number. Rather the allegations make clear that Elsa Keidan was the only individual who received calls.

provided her phone number ending in 9558, her email address, and her home address. The submission process on AT&T's website includes a disclosure informing users that, by providing their contact details, they are consenting to being contacted by AT&T via phone and email[2].

In accordance with plaintiffs' written request, AT&T contacted Elsa Keidan on June 12, 2025 using the same telephone number provided to notify her that her home address was now eligible for AT&T Fiber. AT&T's contact history confirms that contact was made with a live person during the call.

Contrary to the Second Amended Complaint's allegations, however, AT&T has no record of having contacted Plaintiffs on any date other than June 12, 2025.

Plaintiffs' Second Amended Complaint does not allege sufficient facts showing that AT&T is even responsible for the alleged calls. Plaintiffs fail to provide any facts whatsoever supporting any allegation that AT&T, or any other entity, placed a call to them. Plaintiffs further fail to provide any information regarding the alleged callers or even the substance of a single call alleged to have been received. Such conclusory allegations do not support a cause of action for either direct or vicarious liability, and must be dismissed. Finally, Plaintiff Garrick S. Keidan should be dismissed from this lawsuit as there are no allegations of any calls made to his cellular phone whatsoever.

## FACTUAL BACKGROUND

### A. Plaintiff Elsa Keidan Agreed to AT&T's CSA When Her Connected Car Account was Activated.

Plaintiffs' central allegations are that between June 13 and June 21, 2025, AT&T, or someone on AT&T's behalf, placed calls to Plaintiffs without their consent. Sec. Am. Compl., ¶

[2] The full language states that "[b]y providing my email and/or mobile phone above, I agree to receive special offers and promotions from AT&T relating to AT&T Internet via email and/or text messages, automated and/or manual phone calls."

14. Plaintiffs do not appear to know who made these calls. *Id.* ("[T]he Keidans received eleven unsolicited calls from or on behalf of AT&T to their cellular phone ending 9558.")

Plaintiff Elsa Keidan signed up for wireless services administrated by AT&T via a Connected Car account on or about March 27, 2022, which included the acceptance of the CSA. Exhibit 1, Declaration of Monica Hallam ("Hallam Decl.") ¶ 4.

**B. The CSA Includes an Arbitration Provision.**

The CSA that Plaintiff Elsa Keidan accepted on March 27, 2022, includes the following statement:

> **Please read this Agreement carefully. It requires us to resolve disputes through arbitration on an individual basis rather than jury trials or class actions."**

(Emphasis original). *Id.*

The arbitration provision itself is found under the heading "**Dispute Resolution by Binding Arbitration**" (Section 1.3). In the opening Summary, the provision informs the customer that "**[a]rbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted."** (Section 1.3.1) (emphasis original).

The scope of claims covered by the CSA is broad: under Section **1.3.2.1 Claims Subject to Arbitration**, it states "AT&T and you agree to arbitrate all disputes and claims between us, except for claims arising from bodily injury or death. This arbitration provision is intended to be broadly interpreted. It includes, but is not limited to . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation, or any other statutory or common-law legal theory." *Id.*

The provision goes on to make clear that "**you and AT&T are each waiving the right to a trial by jury or to participate in a class action**." (Section 1.3.2.1)(emphasis original). Further under the heading titled "**Requirement of Individual Arbitrations**," the provision provides that

"[t]he arbitrator may award relief (including, but not limited to, damages, restitution, declaratory relief, and injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR AND ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING." (Section 1.3.2.6)(capitalization original).

### C. AT&T's Arbitration Agreement Provides Consumers with Fair Procedures for The Resolution of Individual Disputes

AT&T's arbitration provision includes several features that ensure that customers have a simple and efficient means of resolving any disputes that may arise:

- **Cost-free arbitration:** For claims up to $75,000 where the customer meets the pre-arbitration requirements, AT&T "will pay all [American Arbitration Association ("AAA")] filing, administration, case management, hearing, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an improper purposes (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))." (Section 1.3.2.4);
- **Potential for $10,000 minimum award:** If the arbitrator issues an award in favor of a customer that is greater than AT&T's "last written settlement offer made before an arbitrator was selected" and the customer followed the pre-arbitration notice requirements, then AT&T will pay the customer $10,000 rather than any smaller arbitral award. (Section 1.3.2.5);
- **Potential for double attorneys' fees.** If the arbitrator awards the customer more than AT&T's "last written settlement offer made before an arbitrator was selected"

and the customer followed the pre-arbitration notice requirements, then AT&T will "pay [the customer's] attorney you retained, if any, twice the amount of attorneys' fees and reimburse any reasonably incurred expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration." (Section 1.3.2.5);

- **Small claims court option.** Either party may bring an action in small claims court as an alternative to arbitration. (Section 1.3.2.1);
- **Flexible consumer procedures.** Arbitration will be conducted under the AAA's Consumer Arbitration Rules, which the AAA designed with consumers in mind. (Section 1.3.2.3);
- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, video-conference, or a 'desk' arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator." (Section 1.3.2.3);
- **Conveniently located hearing:** Arbitration will take place "in the county (or parish) of [the customer's] billing address." (Section 1.3.2.3);
- **No confidentiality requirement.** Either party may publicly disclose the arbitration and its result. Further, the provision "does not preclude [the customer] from bringing issues to the attention of federal, state, or local agencies[.]" (Section 1.3.2.1);
- **Full individual remedies available:** "[T]the arbitrator can award the same damages and relief that a court can award under applicable law," such as statutory

or punitive damages, statutory attorneys' fees, or an individualized injunction. (Section 1.3.2.3);

- **Right to a written decision.** "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which his or her decision is based." (Section 1.3.2.3).

These consumer/plaintiff friendly provisions militate that the Court should compel arbitration of Plaintiffs' claims.

### D. Plaintiff expressly consented to be contacted by AT&T

Plaintiffs specifically requested to be contacted prior to any of the communications alleged in the Second Amended Complaint. Specifically, AT&T received a request from Elsa Keidan on February 14, 2024 to be contacted when AT&T Fiber became available at her home address using the "Notify Me" process on www.att.com. Exhibit 2, Declaration of David Cunningham ("Cunningham Decl.") ¶ 3. She provided her phone number ending in 9558 and her email address. *Id.*, ¶ 5. The submission process on AT&T's website includes a disclosure informing users that, by providing their contact details, they are consenting to being contacted by AT&T via phone and email. *Id.*, Ex. A.

AT&T thereafter contacted Elsa Keidan on June 12, 2025 using the same telephone number provided to notify her that her home address was now eligible for AT&T Fiber. *Id.*, ¶ 6. AT&T's contact history confirms that there was contact made with a live person during that call. *Id.*

Contrary to the Second Amended Complaint's allegations, however, AT&T has no record of contacting Elsa or Garrick Keidan on any date other than June 12, 2025. *Id.*

It should also be noted that while Plaintiffs allege contact with door-to-door in-person solicitations (Sec. Am. Compl.,¶ 27), such in-person communications trigger no liability under the TCPA or FTSA.

**MOTION TO COMPEL ARBITRATION**

**I. The FAA Requires Enforcement of the Arbitration Agreement and Compelling Plaintiff's Claims to Arbitration.**

The arbitration agreement contained in the AT&T CSA is enforceable under the FAA. The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, (2011) 563 U.S. 333, 344.

An arbitration provision must meet two basic conditions for the FAA to apply: (1) the provision must be "written," and (2) the provision must be in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both conditions are satisfied here. The arbitration provision is in writing, states that it is governed by the FAA (Section 1.3.2.1), and involves commerce as "[t]elephones are instrumentalities of interstate commerce . . ." *U.S. v. Stackhouse* (9th Cir. 2024) 105 F. 4th 1193. When a court finds that both elements are satisfied, as they are here, it must compel arbitration. *See Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 218. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344.

**A. The CSA, Including the Arbitration Agreement, Constitute a Written Binding Agreement**

It is not reasonably disputable that Plaintiff Elsa Keidan accepted the terms of the CSA when she activated her Connected Car account. The acceptance forms a binding agreement with AT&T to arbitrate disputes. This analysis is governed by "ordinary state-law principles that govern the formation of contracts." *First Option of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *Caley*



250865488v3

*v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists.").

As the Supreme Court has underscored, however, the FAA requires that those principles be generally applicable, rather than "singling out" arbitration agreements "for disfavored treatment." *Kindred Nursing Ctrs. Litd. P'Ship v. Clark*, 137 S. Ct. 1421, 1427 (2017); *see also id.* at 1428 ("A rule selectively finding arbitration contracts invalid because improperly formed fares no better under [FAA] than a rule selectively refusing to enforce those agreements once properly made."). Plaintiff Elsa Keidan's acceptance of the CSA on March 27, 2022, formed a valid contract. Pursuant to Fla. Stat. § 668.004, "an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." *BrewFab, LLC v. 3 Delta, Inc.*, No. 22-11003, 2022 WL 7214223, at *5 (11th Cir. Oct. 13, 2022).

In short, there can be no dispute that Plaintiff Elsa Keidan is bound by the AT&T CSA, including its arbitration agreement.

**B. Plaintiff Elsa Keidan's Claims Fall Withing the Arbitration Provision**

Plaintiff Elsa Keidan's claims fall within the broad scope of the AT&T arbitration agreement, which requires her to "arbitrate all disputes and claims between [her and AT&T], except for claims arising from bodily injury or death." (Section 1.3.2.1). The arbitration clause specifies that the provision "is intended to be broadly interpreted" and "includes, but is not limited to," "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory." *Id.*

That language easily encompasses the claims at issue here, which alleges that AT&T violated federal and state statutes by placing phone calls to Plaintiffs. In addition to falling within the "all disputes and claims between us" language – which requires arbitration of any dispute, with

limited exceptions irrelevant here – Plaintiffs' claims also qualify as claims based "in statute" and claims "arising out of or relating to any aspect of the relationship between" AT&T and Plaintiff.

In addition, FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also, e.g., AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

The Supreme Court has reiterated that the "FAA provides the default rule for resolving certain ambiguities in arbitration agreements," including the rule "that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration," and that rule preempts any state law to the contrary. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418-19 (2019) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Moses H. Cone*, 460 U.S. at 24-25)).

The obvious import of these Supreme Court rulings interpreting the FAA is that if Ms. Keidan believes that her current TCPA action falls outside the scope of the Arbitration Agreement, the place to make that argument is before the AAA, and that any doubt about the coverage or scope of the Agreement should be resolved in favor of arbitration.

## II. This Action Should Be Stayed Pending Arbitration of Plaintiff's Claims

When, as here, the FAA governs an arbitration provision that covers a plaintiff's claims, Section 3 of the FAA directs the district court to compel arbitration and stay the lawsuit. *See* 9

U.S.C. § 3 (providing for a stay of court proceedings pending the resolution of arbitration); *see also, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

"[A] district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute." *Obremski v. Springleaf Fin. Servs., Inc.*, 2012 WL 3264521, at *1 (M.D. Fla. Aug. 10, 2012); *see also Harrell's LLC v. Agrium Advanced (US.) Techs., Inc.*, No. 8:10—CV-1499—T-33AEP, 2011 WL 1596007, at *1 (M.D. Fla. April 27, 2011) (granting stay pending resolution of a motion to compel arbitration).

Accordingly, this action should be stayed in its entirety, and as to all parties and their intertwined claims, subject to completion of arbitration per the CSA.

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

### A. Plaintiffs fail to plead any calls made to Garrick S. Keidan.

Plaintiffs' Second Amended Complaint describes an entirely different tranche of calls than their previous Complaint. Notably, the Second Amended Complaint no longer alleges even a single call placed to Plaintiff Garrick S. Keidan.

While the Plaintiffs allege that "the Keidans" received eleven calls to "their cellular telephone number ending 9558" (Sec. Am. Compl.), Plaintiffs also concede that "Plaintiff Elsa Keidan is the subscriber and sole user of the 9558 Number, and she is financially responsible for the service to that number." (*Id.*, ¶ 31.) Any claims against AT&T for calls made to the 9558 number are, therefore, only attributable to Elsa Keidan.

Plaintiffs also identify a 5110 number controlled by Garrick S. Keidan (*Id.*, ¶ 33), but they do not allege that any calls were placed to the 5110 number.

Accordingly, Plaintiff Garrick S. Keidan is improperly named as a party plaintiff and must be dismissed from this action. His improper joinder should not be used to avoid the arbitration of Plaintiff Elsa Keidan's claims against AT&T.

**B. Plaintiffs fail to plead sufficient facts to state a claim under Rule 12(b)(6).**

Plaintiffs' claims should also be dismissed in their entirety to failure to state a claim. Plaintiffs' Second Amended Complaint implies that Plaintiffs do not know who made these calls. Sec. Am. Compl., ¶¶ 14. ("[T]he Keidans received eleven unsolicited calls from or on behalf of AT&T to their cellular telephone number ending 9558. Each call followed a similar pattern: a representative would attempt to sell AT&T products or services.") These vague and conclusory allegations provide no detail whatsoever about who placed the calls, let alone for what purpose the calls were made.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court accepts all well-pled allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Nor does a complaint suffice if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The court determines whether the well-pled factual allegations are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Thus, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 566 U.S. at 678-79 *quoting*

*Twombly*, 550 U.S. at 557. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Henderson v. JPMorgan Chase Bank, N.A.*, 436 F. Lapp's 935, 937 (11th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

Here, Plaintiffs' allegations are exactly the type of conclusory assertion that are barred by Rule 12. The Second Amended Complaint fails to identify whether AT&T placed the calls, whether someone placed the calls with AT&T's knowledge, the purpose of the calls other than an alleged "representative" attempting to sell "products or services." Sec. Am. Compl., ¶ 14. The Second Amended Complaint makes no effort whatsoever to plead vicarious liability. The Second Amended Complaint makes no effort to describe the actual contents of the alleged calls. The Second Amended Complaints fails to even name the "products or services" that the callers were attempting to sell.

It is axiomatic that a complaint that "contain[s] a mechanical recitation of the elements of a cause of action, and, in particular, only conclusory allegations . . . is insufficient to withstand a motion to dismiss." *Est. of Cox by & through Smith v. Marcus & Millichap, Inc.*, No. 8:18-CV-381-WFJ-AAS, 2022 WL 1465333, at *5 (M.D. Fla. Jan. 24, 2022), *report and recommendation adopted*, No. 8:18-CV-381-T-02AAS, 2022 WL 1448611 (M.D. Fla. May 9, 2022); *Twombly*, 550 U.S. at 555, *Lugassy v. Bank of Am., N.A.*, No. 19-CV-61675, 2020 WL 9460216, at *4 (S.D. Fla. Mar. 6, 2020), *report and recommendation adopted sub nom. Lugassy v. Bank of Am., N.A.*, No. 19-61675-CIV, 2020 WL 9460217 (S.D. Fla. Mar 23, 2020) (dismissing TCPA claim agreeing that the plaintiff's complaint was "devoid of any factual content"); *Cooper v. City of Starke, Fla.*, No. 3:10-CV-280-J-34MCR, 2011 WL 1100142, at *8 (M.D. Fla. Mar. 23, 2011) (dismissing claim because plaintiff's "general allegation" of statutory violation was "insufficient to satisfy the

standards of *Twombly* and *Iqbal*"); *Cunningham v. Chiorzi*, No. 3:20-CV-386-SI, 2020 WL 3104508, at *2 (D. Or. June 11, 2020) (dismissing TCPA claim because "[t]he Complaint [was based only on] threadbare factual allegations [which] amount to a mere recitation of the elements of a TCPA claim.").

Accordingly, Plaintiffs' Second Amended Complaint should be dismissed for its failure to provide sufficient facts that AT&T violated either the TCPA or the FTSA.

## CONCLUSION

Plaintiff Elsa Keidan agreed to arbitrate any disputes between her and AT&T. Accordingly, this action must be stayed until such time that her claims are arbitrated. Beyond that, Plaintiffs' scant factual allegations do not support Plaintiffs' claim that AT&T is responsible for the allegedly improper calls. To wit, Plaintiffs fail to allege even a single call placed to Garrick S. Keidan. Plaintiffs' claims are, therefore, also subject to dismissal if this matter is not stayed for arbitration.

Dated: February 13, 2026

**TROUTMAN PEPPER LOCKE LLP**
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, FL 33401
Telephone: (561) 833-7700
Facsimile: (561) 655-8719

By: */s/ Steven J. Brotman*
Steven J. Brotman
Florida Bar No.: 85750
steven.brotman@troutman.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of February 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record:

Seth M. Lehrman, Esq.
Florida Bar No. 132896
E-mail: seth@lehrmanlaw.com
LEHRMAN LAW
622 Banyan Trail, Suite 200
Boca Raton, FL 33431
Telephone: 754-778-9660

Joshua H. Eggnatz, Esq.
Florida Bar. No.: 0067926
E-mail: JEggnatz@JusticeEarned.com
SGizzie@JusticeEarned.com
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

/s/ *Steven J. Brotman*
Steven J. Brotman